## In re LANG.

District Court, E. D. Pennsylvania. May 4, 1927.

### No. 9577.

1. **Bankruptcy** ⟺396(3)—If state law exempts cash surrender value of life policies, bankruptcy trustee cannot compel payment thereof by withholding policies; statute authorizing such withholding not being applicable (Bankruptcy Act, §§ 6, 70a [Comp. St. §§ 9590, 9654]).

Under Bankruptcy Act, § 6 (Comp. St. § 9590), life insurance policies, which are exempt under law of the state of bankrupt's residence, are exempt from claims of bankrupt's creditors, even though policies may have a cash surrender value, and this section is not limited or controlled by proviso in section 70a (Comp. St. § 9654) that bankrupt may retain policies only by paying to trustee cash surrender value thereof.

2. **Exemptions** ⟺50(1)—Local statutes held to exempt from creditors' claims all sums realizable on life policies at or before maturity; "net amount payable" (Pa. St. 1920, § 12262; Pa. St. Supp. 1924, § 10388a).

Act Pa. May 17, 1919 (P. L. 207; Pa. St. 1920, § 12262), and Act Pa. June 28, 1923 (P. L. 884; Pa. St. Supp. 1924, § 10388a), exempting life insurance policies made for benefit of, or assigned to, wife or children or other dependent relatives of insured, from all claims of creditors, notwithstanding reservation of right in insured to change named beneficiary, in view of the history of legislation, *held* to exempt from claims of creditors all sums realizable on policies at any time, whether on maturity thereof or by loans or cash surrender value before that date; "net amount payable" not being limited to amount payable at insured's death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Net.]

3. **Bankruptcy** ⟺396(3)—Local statutes exempting life insurance policies from creditors' claims held for benefit of insured bankrupt, as well as for his family (Pa. St. 1920, § 12262; Pa. St. Supp. 1924, § 10388a; Bankruptcy Act, § 6 [Comp. St. § 9590]).

Act Pa. May 17, 1919 (P. L. 207; Pa. St. 1920, § 12262), and Act Pa. June 28, 1923 (P. L. 884; Pa. St. Supp. 1924, § 10388a), exempting life insurance policies made for benefit of, or assigned to, wife or children or other dependent relatives of insured, from all claims of creditors, notwithstanding reservation of right in insured to change named beneficiary, in view of the history of legislation, *held* to create exemption for benefit of insured bankrupt, as well as for his wife and family, and such policies were therefore exempt, under Bankruptcy Act, § 6 (Comp. St. § 9590).

In Bankruptcy. In the matter of Howard A. Lang, bankrupt. On petitions to review an order of the referee dismissing separate petitions, filed by bankrupt and by his wife, asking that trustee be directed to return life

insurance policies to petitioner. Order dismissing petition of bankrupt reversed, with direction. Order dismissing petition of bankrupt's wife affirmed.

See, also, 20 F.(2d) 239.

George J. Edwards, Jr., of Philadelphia, Pa., for trustee.

D. Arthur Magaziner, of Philadelphia, Pa., for bankrupt.

KIRKPATRICK, District Judge. On July 28, 1925, when the petition in bankruptcy was filed against him, the bankrupt was the owner of four policies of life insurance in the aggregate amount of $15,000. Three of these policies had been taken out in 1913 and one in 1917. They were all upon his own life, payable to his wife, Nellie M. Lang, and each expressly reserved to the insured the right to change the beneficiary. On the date when the petition was filed, the four policies, after making allowance for certain policy loans, had a total cash surrender value of $2,422.96. The trustee took possession of the policies and declined to surrender them to the bankrupt until the latter paid to the trustee the cash surrender value. The bankrupt and his wife filed separate petitions, each asking that the trustee be directed to return the policies to the petitioner. The referee made an order dismissing the petitions, which order is now before the court for review.

[1] The question involved is whether the cash surrender value of life insurance policies payable to the wife, as to which the husband, a resident of Pennsylvania, retains the right to change the beneficiary, passes to the husband's trustee in bankruptcy by virtue of the Bankruptcy Act. It is settled law that policies of life insurance which are exempt under the law of the state of the bankrupt's residence are exempt under the Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656), even though they may have a cash surrender value. Section 70a of the act deals only with property which, not being exempt, passes to the trustee. Section 6 deals with exemptions, and allows to bankrupts the exemptions which are prescribed by the state laws in force at the time of the filing of the petition.

Section 6 is not limited or controlled by the proviso contained in section 70a to the effect that the bankrupt may retain the policies of life insurance only by paying to the trustee the cash surrender value. If the state law exempts the cash surrender value of life insurance policies, the provisions of section 70a do not apply, and the trustee cannot compel the payment to him of the cash surrender value by withholding the policies. Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018. The numerous cases cited by counsel for the trustee, including Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143, and Cohn v. Malone, 248 U. S. 450, 39 S. Ct. 141, 63 L. Ed. 352, are not in point, because those cases involved only the construction of section 70a, there being no state exemption law applicable. The determination of the question involved in this case therefore depends solely upon whether or not the cash surrender value of these policies is included in "exemptions which are prescribed by the state laws [of Pennsylvania] in force at the time of the filing of the petition."

At the time of the filing of the petition in bankruptcy, three Pennsylvania statutes relating to the exemption of life insurance from claims of creditors were in force and unrepealed, except so far as the later acts impliedly repealed some of the provisions of the earlier. These acts were the following:

The Act of April 15, 1868 (P. L. 103), which provided that "all policies of life insurance or annuities upon the life of any person which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children or any relative dependent upon such person, shall be vested in such wife or children or other relative, full and clear from all claims of the creditors of such person"; the Act of May 17, 1919, P. L. 207 (Pa. St. 1920, § 12262), which provided that "the net amount payable by the insurer under any policy of life insurance, or under any annuity contract upon the life of any person, heretofore or hereafter made for the benefit of, or assigned to, the wife or children or other relative dependent upon such person, shall be exempt from all claims of the creditors of such insured person, whether or not the right to change the named beneficiary is reserved by the insured or is permitted by the insurer"; and the Act of June 28, 1923, P. L. 884 (Pa. St. Supp. 1924, § 10388a), which provided that "the net amount payable under any policy of life insurance or under any annuity contract upon the life of any person, heretofore or hereafter made for the benefit of or assigned to the wife or children or dependent relative of such person, shall be ex-

empt from all claims of the creditors of such person arising out of or based upon any obligation created after the passage of this act, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

It may be noted that the act of 1919 included an express repeal of the earlier Act of May 5, 1915, P. L. 253, which was substantially similar, except that the earlier act exempted "all policies," instead of "the net amount payable by the insurer under any policy." The act of 1923 did not change this language, but specifically limited the exemption to cases where the claims of creditors arose after the enactment of the statute. This provision was no doubt for the purpose of meeting constitutional objections suggested in Weil v. Marquis, supra. The act there under discussion was the act of 1915, but the act of 1919 was open to the same objection.

Section 25 of the Act of May 1, 1876, P. L. 53 (repealed by the act of 1911 [P. L. 581]), need not be considered, because that section applied only to policies issued by companies incorporated under the act of which it forms a part. Section 27 of the Act of June 1, 1911, P. L. 581 (Pa. St. 1920, § 12261), while general in its terms, was part of a comprehensive act regulating insurance companies, and was repealed by the Insurance Company Law of 1921 (Pa. St. Supp. 1924, § 12273a1 et seq.), without any corresponding re-enactment.

The trustee contends (a) that the exemptions provided for by the acts of 1919 and 1923 are limited to the money realized upon the policies as the result of the death of the insured, and that the words "net amount payable" mean net amount payable upon the death of the insured; and (b) that the exemption created is not an exemption to the insured, but to his wife and children, and therefore not an exemption to the bankrupt at all, within the meaning of section 6 of the Bankruptcy Act.

[2] As to the trustee's first contention, a consideration of the history of the legislation in Pennsylvania, upon this subject, as well as the language and scope of the act, leads to the conclusion that the Legislature, by the acts of 1919 and 1923, intended to exempt all sums realizable upon the policies at any time, whether upon the maturity of the policies, or by way of loans or cash surrender value, before that date. Under the act of 1868, the Supreme Court of Pennsylvania held that, after the death of the insured, the proceeds of his life insurance, taken out in the name of his wife, could not be reached by his creditors, even though he was insolvent at the time the policy was taken out.

In McCutcheon's Appeal, 99 Pa. 133, the court said: "* * * The very object and purpose of the act was, to enable insolvent persons to make provision in this way for their families or dependent relatives, which should be good and effective as against, and free and clear of, all claims of creditors." In McNeil v. Golden Cross, 131 Pa. 339, 18 A. 899, and Sebring v. Brickley, 7 Pa. Super. Ct. 198, the act was held effective to exempt proceeds of life insurance from the claims of creditors of deceased insolvents, and the same conclusion was reached by the federal court in Masonic Mutual Life Ass'n v. Paisley (C. C.) 111 F. 32.

Prior to the decision in Weil v. Marquis (1917) 256 Pa. 608, 101 A. 70, there seems to have been no suggestion at any time that the fact that the right to change the beneficiary was reserved by the insured would in any way affect the widow or children's rights after the death of the insured. The point was first raised in that case, and it was there decided that such reservation did not affect the exemption provided for by the act of 1868.

On the other hand, with regard to the cash surrender value of life policies, as distinguished from their proceeds after death of the insured, a succession of decisions of the federal courts in Pennsylvania, including In re Herr (D. C. 1910) 182 F. 716, In re Dolan (D. C. 1910) 182 F. 949, In re Jamison (D. C. 1915) 222 F. 92 (1915), and In re Shoemaker (D. C. 1915) 225 F. 329, established the rule that, in case of the bankruptcy of the insured, the cash surrender value of all policies in which the right to change the beneficiary was reserved passed to the trustee, even though such policies had been taken out in the wife's name. As to proceeds of such policies, by way of cash surrender value, the act of 1868 was therefore inoperative.

In 1919, therefore, when the second of the exemption acts referred to above as still in force was passed, two things had become definitely settled as a result of decisions of the courts in applying the act of 1868: First, that that act was effective to save the proceeds of the policy to the insured's wife and children after his death, even though the right to change the beneficiary had been reserved; second, that where such right was reserved, the act did not exempt the cash surrender value upon bankruptcy of the insured.

There can be little doubt that, in enacting the series of statutes beginning with the act of 1915 (now repealed) and culminating in

the act of 1923, the Legislature had in mind the decisions of the federal courts holding that, in the event of bankruptcy of the insured, the cash surrender value of policies which gave the insured the right to change the beneficiary would not be exempt. All three of these acts provided for an exemption, "notwithstanding the right to change the beneficiary has been reserved or is permitted by the insurer," or used substantially similar language. It may be assumed that the purpose of these acts was to broaden, rather than to restrict, the existing exemptions. Their tenor and phraseology leaves no doubt of that. There would have been no purpose in enacting these statutes, had the intention of the Legislature been to make them to apply only to the proceeds of policies arising after the death of the insured. This fund was already exempted by the act of 1868. The absence of protection as to the cash surrender value was no doubt considered by the Legislature to be a defect in the scheme of exemption, which called for a remedy, and the statutes referred to were clearly enacted to change the rule established by the federal courts.

In the case of Irving Bank v. Alexander, 280 Pa. 466, 124 A. 634, 34 A. L. R. 834, the Supreme Court of Pennsylvania called attention to the exemption laws of the state and carefully reviewed the legislation above referred to, but the question of whether the cash surrender value of policies taken out by an insolvent insured was an asset of the insured, which could be subjected to the payment of his debts prior to his death, was not involved in that case, and the court did not decide it.

We conclude that the effect of the acts of 1919 and 1923 was to exempt from the claims of creditors the cash surrender value of policies of the character referred to in those acts. There is nothing in the language of the statutes which would lead to a different conclusion. The argument for the trustee, based on the use of the words "the net amount payable," is not convincing. As the referee stated in his opinion, these words "might be held to mean either the net amount payable after the death of the insured, or the net amount payable upon the surrender of the policies." They are quite as applicable to the one as to the other, and simply mean that the fund exempted is that which arises after deduction of loans or other amounts properly due to the insurer.

[3] As to the second contention of the trustee, that the exemption created by the acts is an exemption for the benefit of the bankrupt's wife, and not for the bankrupt, the language of the later acts is "shall be exempt from all claims of creditors." The words of the act of 1868 were "shall be vested in such wife * * * full and clear from all claims of the creditors." The words of the later acts extend the exemption to the insured himself, as well as to his family. The change is significant, and the further inference may be drawn that the subject-matter of the acts of 1919 and 1923 was the cash surrender value, since, in the ordinary policy, the insured and not the beneficiary is the one who can collect this.

There are two petitions here. In view of the holding that the cash surrender value of the policies in question is exempt to the bankrupt, the order of the referee dismissing the petition of Howard A. Lang must be reversed, and an order may be made directing the trustee to deliver the policies in question to the bankrupt. As to Nellie Lang, the order may be affirmed.